UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| KEVIN GARNETT, | Civil No. 18-2590 (JRT/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| WELENKEN CPAS and MICHAEL A. WERTHEIM, | |
| Defendants. | |

Mark F. Gaughan, **ERICKSON, BELL, BECKMAN & QUINN, P.A.**, 1700 West Highway 36, Suite 100, Roseville, MN 55113, and Richard C. Ebeling, **LANZA REICH & DANIEL, LLP**, 221 West 37th Street, New York, NY 10018, for plaintiff.

M. Gregory Simpson, Robert W. Vaccaro, and Timothy R. Schupp, **MEAGHER & GEER, PLLP**, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, for defendants.

Plaintiff Kevin Garnett brings this action against Welenken CPAs and Michael A. Wertheim ("Defendants") alleging professional malpractice, breach of fiduciary duty, and aiding and abetting. Each of the allegations is related to Defendants' role in the oversight of a business relationship between Garnett and a man named Charles A. Banks, IV ("Banks"). Defendants now bring a Motion to Dismiss for lack of personal jurisdiction. Because Garnett has established that Defendants had sufficient minimum contacts with Minnesota and exercising personal jurisdiction over them would not be unreasonable, the Court will deny the motion.

**BACKGROUND**

Throughout Garnett's career as a professional basketball player, Banks was a "long-term trusted wealth manager, confidant, and personal friend" to Garnett. (Notice of Removal ¶ 1, Ex. A ("Compl.") ¶ 6, Sept. 5, 2018, Docket No. 1-1.) In 2010, Banks hired Michael Wertheim—a CPA and partner of Welenken CPAs—on behalf of Garnett. (*Id.* ¶¶ 3, 10.) Originally, Wertheim was hired to file income tax returns, but he ended up taking a much larger role in Garnett's financial life and in the businesses in which Garnett had an interest. (*Id.* ¶¶ 11–12.) For instance, Wertheim prepared financial statements, became the registered agent for businesses in which Garnett had an interest, and created budgets and spending limits for Garnett. (*Id.* ¶ 12.) Ultimately, instead of simply preparing income tax returns, Defendants "provided accounting services to Banks, Garnett, and virtually all of the businesses Garnett shared with Banks." (*Id.* ¶ 6.) Although Wertheim represented Garnett, he took direction from Banks and had little to no direct contact with Garnett. (*Id.* ¶ 10.)

In June 2017, Banks "was sentenced to federal prison for admittedly defrauding" a different professional basketball player. (*Id.* ¶ 6.) Seeking to investigate Banks for himself, Garnett and his counsel obtained records from Defendants and discovered evidence that Banks had also been defrauding Garnett. (*Id.* ¶¶ 6–7.) For instance, Banks had siphoned money from a joint investment venture between Banks and Garnett called Hammer Holdings, LLC, ("Hammer") a California company. (*Id.* ¶¶ 8–9.) Banks was Hammer's managing member, but Garnett had been led to believe that he and Banks each owned half of Hammer, and that all the contributions made by Garnett were being matched by Banks.

(*Id.*) In reality, Banks used Hammer as an individual bank account. At one point he transferred over $14 million from Garnett's personal bank accounts into Hammer and then borrowed almost $8 million for himself. (*Id.* ¶ 15.) Banks also used Hammer's funds to pay his own credit cards, pay his mortgages, hire private jets, and make personal investments unrelated to Hammer. (*Id.* ¶ 25.) Banks further invested Hammer's funds into valueless entities in which he had a personal financial interest. (*Id.* ¶¶ 22-23.)

Garnett alleges that Wertheim was fully aware of Banks's actions. For example, Garnett alleges that Wertheim was aware of Banks's $8 million loan, and that Banks was misappropriating Hammer's funds. (*Id.* ¶¶ 15, 27). Nevertheless, Wertheim never alerted Garnett to any of Banks's actions. (*Id.* ¶¶ 13, 16, 19, 21, 27.) To the contrary, Garnett alleges that Wertheim actively worked with Banks to conceal Banks's actions from Garnett. (*Id.* ¶¶ 28–29.)

Garnett's sister, Sonya Garnett, "serve[s] as [Garnett's] primary point of contact for entities and persons involved in [his] business endeavors." (Decl. of Sonya Garnett ("Garnett Decl.") ¶ 1, Oct. 31, 2018, Docket No. 35.) Accordingly, while Wertheim had little contact with Garnett, he interacted hundreds of times with Sonya. (*See id.* ¶ 3.) They contacted one another primarily through email, but they also met once in person on January 6, 2016, at Ms. Garnett's home in Minnesota. (*Id.* ¶¶ 3, 8.) At that meeting, Wertheim and Ms. Garnett discussed a budget that Wertheim and Banks had prepared for Garnett. (*Id.* ¶ 8.) Wertheim notified her that Garnett was overspending and told her that Garnett needed to follow the proposed budget. (*Id.*) After the meeting, Ms. Garnett and Wertheim attended a Minnesota Timberwolves game to see Garnett play, and Wertheim spent the night in a

hotel in Minneapolis. (*Id.* ¶ 9.) Notably, although Garnett alleges that Wertheim was aware of Banks's fraud at the time of the meeting, Wertheim did not discuss Banks's actions with Ms. Garnett. (*See id.* ¶ 10.)

During the time that Defendants served as accountants for Hammer and Garnett, Defendants mailed at least one invoice to Garnett in Minnesota and addressed that invoice to Ms. Garnett's attention. (*Id.* ¶ 11, Ex. A, Nov. 1, 2018, Docket No. 36.) The invoice described the work Welenken did for Garnett as "tax return planning, consultation, government correspondence, personal financial statement, bookkeeping and general business consultation, meeting." (*Id.*)

After discovering Banks's fraud, Garnett brought an action against Defendants in Hennepin County District Court. (Compl.) Defendants removed the case to this Court on September 5, 2018. (Notice of Removal, Sept. 5, 2018, Docket No. 1.) Garnett contends that Defendants breached their fiduciary duty to him, committed professional malpractice, and aided and abetted Banks in breaching his fiduciary duties to Garnett. (Compl. ¶¶ 31-49.) Defendants have now filed Motion to Dismiss for lack of personal jurisdiction. (Mot. to Dismiss, Sept. 26, 2018, Docket No. 10.)

## DISCUSSION

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides that a party may move to dismiss claims for lack of personal jurisdiction. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citing *Falkirk Min.*

*Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir. 1990); *Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir. 1988)). As long as there is "some evidence upon which a prima facie showing of jurisdiction may be found to exist," the Rule 12(b)(2) motion will be denied. *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008) (quoting *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977)). The party seeking to establish personal jurisdiction bears the burden of proof, and the burden does not shift to the party challenging personal jurisdiction. *Epps*, 327 F.3d at 647. The Court must view the evidence in the light most favorable to the non-moving party and may consider materials outside of the pleadings. *Westley v. Mann*, 896 F. Supp. 2d 775, 786 (D. Minn. 2012).

A federal court in Minnesota sitting in diversity may exercise personal jurisdiction over a defendant if doing so (1) is consistent with the Minnesota state long-arm statute, Minn. Stat. § 543.19; and (2) comports with Due Process. *Pope*, 588 F. Supp. 2d at 1014. Minnesota Statute § 543.19 reaches as far as constitutional Due Process allows; thus, the Court need only consider whether exercising personal jurisdiction over Defendants is consistent with Due Process. *Id*. at 1015.

Due process requires that a nonresident defendant have sufficient "minimum contacts" with the forum state so as not to offend "traditional notions of fair play and substantial justice." *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate

being haled into court there." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In the Eighth Circuit, courts look to "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). The first three factors are "of primary importance," and the Court may consider them together. *Digi-–Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996).

## II. DEFENDANTS' MOTION TO DISMISS

Viewing the evidence in a light most favorable to Garnett, Defendants' relevant contacts with Minnesota, can be summarized as: (1) hundreds of emails with Ms. Garnett regarding Garnett's finances; (2) a face to face meeting with Ms. Garnett during which Garnett's finances were discussed and during which Wertheim did not reveal what he knew about Banks's fraud; and (3) invoices for financial services sent to Garnett in Minnesota.

Defendants' main argument is that the third factor of the Eighth Circuit's test is not met here. They contend that the contacts cited above do not relate to the underlying action and essentially argue that there is an insufficient relationship between the Defendants, the forum, and the cause of action. Defendants believe that, since neither Hammer nor Banks's fraud was discussed with Garnett or Ms. Garnett during any of Defendants' contacts with Minnesota, Minnesota is not related to the current lawsuit.

The problem with Defendants' argument is that Garnett's claims do not arise from any affirmative action by Defendants. Instead, Garnett's claims are all based on Defendants' alleged decision not to act, i.e. their decision to remain silent regarding Banks's fraudulent activities. For example, had Garnett alleged that Defendants lied to him in California to induce him into some action there, Defendants' argument would clearly apply because the underlying lawsuit's relevant activities would have occurred in California, and therefore personal jurisdiction would likely be improper in Minnesota.

But this situation is distinct from that hypothetical one. The question at issue here is whether a defendant's **inaction** in a given state can provide sufficient minimum contacts in that state. While uncommon, courts have grappled with this question before. In *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999), the Fifth Circuit considered a claim that arose out of an attorney-client relationship. In that case, an attorney defendant had negotiated a series of business transactions on behalf of his client while also having an undisclosed financial interest in the transaction. *Id.* at 209–11. Despite years of phone and mail contacts, and one in-person meeting in Texas, the attorney defendant had never disclosed his financial conflicts to the client. *Id.* The client eventually brought claims alleging fraud, fraudulent inducement, breach of contract, and breach of fiduciary duties. *Id.* at 211.

In analyzing whether the exercise of personal jurisdiction was proper in Texas, the court first acknowledged that "[o]f course, when a lawyer chooses to represent a client in another forum, that in itself does not confer personal jurisdiction if the claim does not arise from the lawyer's contacts with the forum." *Id*. at 213. Nevertheless, the court

distinguished those situations from the one before it because "the [attorney defendant] continually communicated with the forum while steadfastly failing to disclose material information." *Id.* The court described the attorney's repeated failure to disclose his conflicts as "the purposeful direction of material omissions to the forum state." *Id.* Thus, the court found personal jurisdiction because the underlying claim was "based on a failure to disclose material information," the defendant had communicated into the state by mail and phone, and the defendant had met with the plaintiff in person in the forum state but failed to divulge his conflicts.

In a more recent case, *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235 (5th Cir. 2008), the Fifth Circuit re-adopted its *Wien Air* holding. The facts of *Walk Haydel* were nearly identical to those in *Wien Air* and revolved around an attorney's failure to disclose a conflict of interest regarding a project in which the attorney was involved. *Id.* at 243–244. Despite meeting face-to-face with the plaintiff, exchanging "over a hundred contacts in the form of telephone calls, faxes, and letters concerning the project," and delivering a Joint Venture Agreement by mail, the attorney never disclosed his conflict to the plaintiffs. *Id.* As a result, the *Walk Haydel* court found that the attorney had purposefully directed material omissions into the state and reversed a district court's decision not to exercise personal jurisdiction. *Id.* at 245.

In this district, Judge Magnuson has considered and accepted a similar argument. In *Personalized Brokerage Servs., LLC v. Lucius*, Civ. No. 05-1663, 2006 WL 208781, *1 (D. Minn. Jan. 26, 2006), a defendant failed to disclose his ownership of certain companies that were directly competing with his employer, despite his duty to do so. Considering

whether personal jurisdiction was proper, the Court disagreed with the defendant's contention that "omissions to act cannot constitute contacts with Minnesota so as to confer jurisdiction." *Id.* at *4. Instead, the Court reasoned that, because "the duty to report outside business dealings existed in Minnesota" when the defendant failed to report his activities, and because "a failure to perform a legally required act within a forum can establish personal jurisdiction," personal jurisdiction was proper. *Id.* The Court also acknowledged that the question of personal jurisdiction was a close call, but stated that "in such cases, the Court must resolve any doubts in favor of jurisdiction." *Id.* (citing *Hardrives, Inc. v. City of LaCrosse*, 240 N.W.2d 814, 818 (Minn. 1976)).

Defendants argue that an "opportunity to disclose" theory of jurisdiction has been rejected by courts, citing *McIlwee v. ADM Indus., Inc.*, 17 F.3d 222 (7th Cir. 1994). It is true that, in *McIlwee*, the Seventh Circuit stated that if "the existence of an opportunity to disclose is dispositive, personal jurisdiction would lie in Illinois regardless whether defendants had any connection with the state as long as defendants breached a duty to disclose and an Illinois resident suffered a financial injury." *Id.* at 224. But *McIlwee* is easily distinguishable. In that case, the defendant's only contact with the Illinois plaintiff was through phone calls; the defendant had never entered Illinois to meet with the plaintiff. It was only in that context that the court refused to extend personal jurisdiction. And even so, the Seventh Circuit did not completely rule out the idea that phone contacts could

-9-

provide minimum contacts in a different situation in which "defendants harbored a fraudulent intent in withholding information" during the calls. *Id.* at 225.[1]

When viewed in the proper context, the contacts that Defendants had with Minnesota are sufficiently related to the underlying lawsuit such that exercising personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Minn. Mining & Mfg. Co.*, 63 F.3d at 697. This case is remarkably similar to those cited above. Here, Garnett and Banks entered into a business relationship with Defendants. While Defendants may have initially been hired to file income taxes, Garnett alleges that the relationship expanded such that Defendants were providing accounting services to Garnett, Banks, and the businesses that they controlled or had an interest in.

Importantly, beyond just having a fiduciary relationship with an in-state plaintiff, Defendants were consistently in contact—through email—with Ms. Garnett regarding the finances of Garnett; traveled to Minnesota and neglected to discuss Banks's fraud; and sent at least one invoice to Minnesota for the multitude of services – including financial services – they provided. Defendants had a duty to disclose Banks's activities, yet failed to do so despite significant contacts with Minnesota. In this way, Defendants directed material omissions into Minnesota, and the Court's exercise of personal jurisdiction is proper.

---

[1] Defendants also argue that the email communications do not suffice to establish personal jurisdiction. While it is true that emails and similar communications do not by themselves suffice for personal jurisdiction, all of the contacts should be considered together, and the emails between Ms. Garnett and Wertheim may be used to support the exercise of personal jurisdiction. *Digi-Tel Holdings*, 89 F.3d at 523.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants Motion to Dismiss for lack of jurisdiction [Docket No. 10] is **DENIED**.

DATED: March 13, 2019                            \_\_\_\_\_s/John R. Tunheim\_\_\_\_
at Minneapolis, Minnesota.                         JOHN R. TUNHEIM
                                                              Chief Judge
                                            United States District Court